## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **MERITT BUFFALO EVENTS CENTER, LLC, d/b/a BUFFALO VALLEY EVENT CENTER**<br>      **Plaintiff,** | §<br>§<br>§<br>§<br>§ | |
| **v.** | §<br>§ | **CIVIL ACTION NO. 3:15-cv-03741-D** |
| **CENTRAL MUTUAL INSURANCE COMPANY, DAVID MASSEY and STEVE CAGLE**<br>      **Defendants.** | §<br>§<br>§<br>§ | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, MERITT BUFFALO EVENTS CENTER, LLC, d/b/a BUFFALO VALLEY EVENT CENTER, a/k/a MERITT BUFFALO EVENTS, LLC ("hereinafter collectively referred to as Plaintiff") files this its Plaintiff's First Amended Complaint complaining of Defendants CENTRAL MUTUAL INSURANCE COMPANY, DAVID MASSEY and STEVE CAGLE, and would respectfully show unto the Court and Jury the following:

### I.  PARTIES

1.      Plaintiff is a Texas Limited Liability Company in good standing in the State of Texas.

2.      Defendant Central Mutual Insurance Company ("Central") is an insurance company engaged in the business of insurance in the State of Texas and may be served through its counsel of record, Erik E. Ekvall, Ekvall & Byrne, L.L.P., 4450 Sigma Road, Suite 100, Dallas, Texas 75244.

3.      David Massey ("Massey") is a licensed insurance adjuster and may be served through his counsel of record, Erik E. Ekvall, Ekvall & Byrne, L.L.P., 4450 Sigma Road, Suite 100, Dallas, Texas 75244.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - PAGE 1 OF 21.**

4.      Defendant Steve Cagle ("Cagle") is a licensed insurance adjuster and may be served through his counsel of record, Erik E. Ekvall, Ekvall & Byrne, L.L.P., 4450 Sigma Road, Suite 100, Dallas, Texas 75244.

## II.  BACKGROUND FACTS

5.      This suit arises out of the adjustment and claims handling practices as they relate to the Plaintiff's insurance claim under a policy issued by Central.

6.      Plaintiff purchased insurance policies from Central for many years prior to the loss made the subject of this suit.  Defendant Central issues the policies to Plaintiff in the name of Meritt Buffalo Events Center, LLC d/b/a Buffalo Valley Event Center.  The policies insured Plaintiff's property located at 2946 Ganzer Road West, Denton, Texas 76207.  All premium payments required to be paid for the policies were paid and the policies were in full force and effect without lapse during the applicable policy periods relative to the insurance claim at issue.  The policies provide coverage for damage by fire.

7.      Plaintiff conducts business as the Buffalo Valley Event Center, a destination wedding venue, and is also known as Meritt Buffalo Events, LLC.  On April 16, 2014, Plaintiff's property sustained significant damage resulting from a fire. Plaintiff promptly provided notice of loss to Central and cooperated with its investigation of the claim. Central initially assigned the claim to Massey for investigation and processing.

8.      In connection with the investigation of the claim, Massey performed inspections of the property and confirmed the extensive damage caused by the subject fire.  This included significant damage to Plaintiff's structure, damage to Plaintiff's contents, Business Income loss and Extra Expenses incurred relative to the loss.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - PAGE 2 OF 21.**

9.      During the adjustment of the claim, Massey represented (which was later confirmed and represented by Cagle), that Plaintiff possessed Business Income coverage as well as Extra Expense coverage. Massey represented that the insurance policy issued by Central contained provisions which would  cover the following

a.      the costs associated with the rental of temporary restrooms while the fire damage to the main structure were effectuated;

b.      the costs associated with the temporary HVAC system for the temporary tent erected at the property while the fire damage to the main structure was repaired;

c.      the costs associated with the three-phase electrical work required by Denton County Code Enforcement (which was delayed the point that it was completed shortly before Plaintiff returned to the completed structure); and

d.      the costs associated with the rental of temporary dressing rooms for the bride and groom while the fire damage to the structure was repaired.

10.     While Massey authorized payments to Plaintiff for certain damage to the property, he delayed and/or failed to make full and prompt payment in several aspects, despite representing the policy provided coverage.  Such included failure to fully pay for the costs associated with the rental of temporary restrooms, the costs associated with the temporary HVAC system for the temporary tent erected at the property, the costs associated with the three-phase electrical work required by the code enforcement officer, as well as the costs associated with the rental of temporary dressing rooms for the bride and groom while the fire damage to the structure was repaired.

11.     In addition, the subject fire damaged one of Plaintiff's freezers resulting in spoilage of chicken.  Rather than allow Plaintiff to immediately dispose of the rotted chicken, Massey unreasonably required Plaintiff to retain the rotted chicken in the freezer for several weeks pending an inspection.  Needless to say, the smell of the rotted chicken permeated the facility putting off current customers as well as potential customers resulting in further damage to Plaintiff's business.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - PAGE 3 OF 21.**

This is just one of numerous instances which establishes Massey's improper handling of Plaintiff's claim.  Interestingly, Cagle authorized Central's fire subrogation expert to take and do destructive testing on an undamaged freezer.  Thereafter, Cagle paid Plaintiff less than fair market value (let alone, replacement cost), for the freezer despite Plaintiff's policy being a replacement cost policy.

12.     Also, Massey informed Plaintiff that an advance of $50,000.00 would be forthcoming and was being paid under Extra-Expense portion of the policy. Later, after payment was made, the payment was reclassified as a Business Personal Property payment.  The reclassified payment lowered the amount received by Plaintiff under the policy.

13.     Additionally, Massey, when adjusting Plaintiff's business income loss claim, failed to engage an expert in the destination wedding or hospitality business to properly determine Plaintiff's loss, resulting in Plaintiff receiving a shortfall payment relative to the business interruption loss of business income claim clearly covered by the insurance policy.

14.     After Massey performed investigative and adjusting services on the claim and made certain deficient payments to Plaintiff, Central reassigned the claim to Defendant Cagle.  Cagle continued the adjustment of Plaintiff's insurance claim until he left the employ of Central. Later, the claim was reassigned to Massey.

15.     Cagle's adjusting services failed to follow the insurance policy, Texas law or that of a reasonably prudent adjuster in that he:

    a.     allowed a non-licensed individual to adjust all or a portion of Plaintiff's insurance claim;

    b.     failed to hire or consult with an individual familiar with the destination wedding venue or hospitality business;

    c.     required Plaintiff to provide certain documentation before allowing a business extra-expense claim despite no such policy requirement;

**PLAINTIFF'S FIRST AMENDED COMPLAINT - PAGE 4 OF 21.**

d.      required pre-approval of certain necessary business expense, in violation of the policy;

e.      failed to take possession of certain salvage items in a timely manner, damaging Plaintiff; and

f.      failed to pay all of Plaintiff's property that was damaged as a result of a covered loss.

16.     After Plaintiff complained about Defendants' failure to pay what was owed under the policy and Texas law, Central determined that it still lacked the necessary information to adjust Plaintiff's claim. Cagle hired an attorney, and, under the ruse of continuing to investigate Plaintiff's claim, demanded the Examination Under Oath of Roberta Young and Xernie Meritt.

17.     On May 21, 2015, Plaintiff's representatives, Roberta Young and Xernie Meritt, appeared for their Examination Under Oath. Although previously provided, Ms. Young and Mr. Meritt provided voluminous documentation supporting the claim as well as establishing the delayed payments and underpayments made by Massey and Cagle. This included binders containing support for the loss including, but not limited to expenses incurred by Mr. Meritt traveling to Texas to address issues with the claim on the property, expenses relative to the reconstruction (which included take down and put back-up), cleaning of six chandeliers, truck rental, restroom rental, entrance tent rental, dance floor and window panel rental, bride and groom dressing room rental, HVAC, power and insurance and increased fuel costs for generators.

18.     In addition, documentation was provided relative to loss of income from canceled events and/or discounts, approved by Massey and/or Cagle, given by Plaintiff to maintain its customers. Much of this documentation had previously been provided by either Ms. Young or Mr. Meritt during the pendency of the claim to Massey and/or Cagle. Despite receiving and/or reviewing this documentation on more than one occasion, Massey and Cagle failed to pay and/or fully pay various portions of the claim despite having authority to do so.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - PAGE 5 OF 21.**

19.     After receipt of the EUO transcripts, Ms. Young and Mr. Meritt reviewed the transcripts and made corrections/changes.  The EUO transcripts were returned to Central in compliance with Plaintiff's duties on June 23, 2015.  More than twelve months have elapsed since returning the EUOs and no further payments have ever been made.

20.     Given Central, Massey and Cagle failed and refused to fully pay Plaintiff for damages resulting from a covered peril, Plaintiff was underpaid by more than $900,000.00.  Accordingly, Central, Massey and Cagle have failed in good faith to settle the claim, and wrongfully underpaid such claim, causing substantial economic losses in excess of the underlying property and business income loss.

21.     During the claims process, Central, Massey and Cagle were in possession of evidence that Plaintiff's loss exceeded the monies paid on the claim.  Despite such evidence, Central, Massey and Cagle failed and refused to properly investigate, timely investigate, and fully pay the claim.  Plaintiff cooperated with Central, Massey and Cagle provided information relative to the claim including allowing inspections of the property and cooperated with all requests.

22.     Plaintiff forwarded a pre-suit demand in compliance with the Texas Insurance Code and DTPA, however such was ignored.  Defendants' actions have left Plaintiff with no further option but to institute this litigation to recover monies due under the policy.

### III.  CLAIMS AGAINST DEFENDANT CENTRAL

### A. Breach of Contract

23.     Plaintiff reasserts and incorporates by reference all of the facts and allegations set forth above.

24.     Plaintiff would show that the insurance policy that was purchased from Defendant Central was in full force and effect at the time of the April 16, 2014 fire damaging its property.  The policy constitutes a valid and enforceable contract with Defendant.

25.     Among the perils that the policy insures against is damage resulting from fire including coverage for damage to the structure, damage to contents, business income loss and extra expense coverage.  The policy provides that if such a loss occurs, then Defendant will pay the insured the cost of repair or replacement of the damage with like kind and quality, as well as associated loss of business income and extra expense incurred resulting from the fire at issue.

26.      Plaintiff would show that it reported the claim to Defendant as soon as practicable in accordance with the terms of the policy and Defendant accepted and acknowledged the claim in writing. Plaintiff presented its claim and documentation supporting its damages to Defendant. Thereafter, Defendant processed the claim, but has refused and failed to fully pay the claim in accordance with its obligations pursuant to the contract of insurance, such failure constituting a breach of contract. Such breach caused Plaintiff to suffer both actual and consequential damages.

## B.  Common Law Causes of Action

27.     Plaintiff reasserts and incorporates by reference all of the facts and allegations set forth above.

28.     By its acts, omissions, failures and conduct, Defendant Central breached the common law duty of good faith and fair dealing by delaying and denying Plaintiff's claim without any reasonable basis and by failing to conduct a reasonable investigation with respect to the insurance claim.  Defendant also breached its duty by delaying payment of Plaintiff's claim and by failing to settle Plaintiff's entire claim when Defendant knew or should have known that it was reasonably

**PLAINTIFF'S FIRST AMENDED COMPLAINT - PAGE 7 OF 21.**

clear that the claim was covered. Such breach of the common law duty of good faith and fair dealing

caused Plaintiff to suffer both actual and consequential damages.

## C. DTPA Cause of Action

29.     Plaintiff reasserts and incorporates by reference all the facts and allegations set forth

above.

30.     Plaintiff has met all conditions precedent to bringing this cause of action against

Defendant Central.  By its acts, omissions, failures and conduct that are described in this petition,

Defendant violated the DTPA in many respects including, but not limited to, the following:

a.     Defendant Central represented to Plaintiff that the insurance policies and Defendant's adjusting and investigative services had characteristics or benefits that it did not have, which gives Plaintiff the right to recover under Section 17.46 (b)(5) of the DTPA in that Central represented the policy had lost business income and extra expense coverage yet failed to fully pay Plaintiff its lost business income and extra expenses;

b.     Defendant Central represented to Plaintiff that the insurance policies and Defendant's adjusting and investigative services were of a particular Central, quality, or grade when they were of another in violation of Section 17.46 (b)(7) of the DTPA in that Central, through its adjusters, told Plaintiff not to worry, you have a good policy and your claim will be adjusted fairly;

c.     Defendant Central represented to Plaintiff that the insurance policies and Defendant's adjusting and investigative services conferred or involved rights, remedies, or obligations that it did not have, in violation of Section 17.46 (b)(12) of the DTPA in that Central represented the policy would cover certain categories of damage, business income and extra expense coverage, yet failed to fully pay Plaintiff for such damage;

d.     Defendant Central engaged in an unconscionable action in that it took advantage of Plaintiff's lack of knowledge, ability and experience in insurance matters to a grossly unfair degree given Plaintiff is not in the business of insurance, has little experience filing insurance claims, has little knowledge of Texas insurance law, and has no knowledge of the duties of the carrier and adjusters to insureds when adjusting and paying claims. Defendant's unconscionable conduct gives Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA; and,

e.  Defendant Central's conduct, acts, omissions and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.50 (a)(4) of the DTPA.

31.  All of the above-described acts, omissions and failures of Defendant were relied upon by Plaintiff to its detriment and were a proximate and producing cause of Plaintiff's damages. Further, said unlawful acts and practices were committed knowingly and intentionally, for which Plaintiff should recover the additional damages as provided by the DTPA.

## D.  Cause of Action for Unfair Insurance Practices

32.  Plaintiff reasserts and incorporates by reference all of the facts and allegations set forth above.

33.  Plaintiff has satisfied all conditions precedent to bringing this cause of action against Defendant Central.  By its acts, omissions, failures and conduct, Defendant Central has engaged in unfair methods of competition and unfair or deceptive acts or practices in the business of insurance in violation of Sections 541.051 and 541.060 of the Texas Insurance Code.  Such violations include, without limitation, all the conduct described in this petition plus Defendant Central's unreasonable delays in the investigation, adjustment and resolution of Plaintiff's claim and its failure to pay monies owed under the policy after liability had become reasonably clear.

34.  Specifically, Defendant Central is guilty of violating the Texas Insurance Code in many respects including, but not limited to, the following:

a.  Defendant Central engaged in unfair claims settlement practices prohibited by Section 17.50 (A)(4) of the DTPA and Section 541.060 (1) of the Texas Insurance Code by misrepresenting to a claimant a material fact or policy provision relating to coverage at issue by representing certain coverage for loss was available under the policy including i) the costs associated with the rental of temporary restrooms while the fire damage to the main structure were effectuated; ii) the costs associated with the temporary HVAC system for the temporary tent erected at the property while the fire damage to the main structure was repaired, iii) the costs associated with the

three-phase electrical work required by the code enforcement officer (which was delayed the point that it was completed shortly before Plaintiff returned to the completed structure); iv) the costs associated with the rental of temporary dressing rooms for the bride and groom while the fire damage to the structure was repaired, v) the costs associated with the rental of other items needed to keep Plaintiff's business operational,  and then failing to fully pay Plaintiff for such damage.

b.      Defendant Central engaged in unfair claims settlement practices prohibited by Section 17.50 (A)(4) of the DTPA and defined in Section 541.060 (2) of the Texas Insurance Code by failing to attempt, in good faith, to effectuate a prompt, fair and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear by failing to pay Plaintiff's claim in full and in a timely manner;

c.      Defendant Central engaged in unfair claims settlement practices prohibited by Section 17.50 (A)(4) of the DTPA and defined in Section 541.060 (3) of the Texas Insurance Code by failing to provide promptly to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of a claim by failing to explain Central's failure to fully and timely pay the claim;

d.      Defendant Central engaged in unfair claims settlement practices prohibited by Section 17.50 (A)(4) of the DTPA and in Section 541.060 (4) of the Texas Insurance Code by failing within a reasonable time to affirm or deny coverage of a claim to a policyholder; or submit a reservation of rights to a policyholder by delaying payment and underpaying the claim; and

e.      Defendant Central engaged in unfair claims settlement practices prohibited by Section 17.50 (A)(4) of the DTPA and defined in Section 541.060 (7) of the Texas Insurance Code by refusing to pay a claim without conducting a reasonable investigation with respect to the claim by failing to pay Plaintiff's claim in full.

35.     The above conduct was relied upon by Plaintiff to its detriment and was a proximate and producing cause of its damages. Further, said unlawful acts and practices were committed knowingly and intentionally, for which Plaintiff should recover additional damages as provided by the Texas Insurance Code.

## E.  Violation of Prompt Payment of Claims Act

36.     Plaintiff would show that Defendant Central violated the Prompt Payment of Claims

Act, Section 542.051, Subchapter B of the Texas Insurance Code, by failing to properly and timely

investigate Plaintiff's claim and by failing to pay Plaintiff's claim.  Defendant's failure to pay

Plaintiff's claim constitutes an automatic violation of Section 542.058 which provides:

> "*Except as otherwise provided, if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060.*"

37.     Defendant's wrongful rejection of the claim necessarily means it failed to pay within

60 days automatically violating Section 542.058.  Accordingly, Plaintiff is entitled to the relief set

forth in Section 542.060 of the act, including attorney's fees.

## IV.  CLAIMS AGAINST DEFENDANT MASSEY

### A.  Deceptive Trade Practices Act Violations

38.     Plaintiff reasserts and incorporates by reference all the facts and allegations set forth

above.  Plaintiff has met all conditions precedent to bringing this cause of action against Defendant

Massey.

39.     Plaintiff cooperated with Massey's investigation of the claim by responding to

inquiries and making their property available for inspection.  Massey failed to properly investigate

Plaintiff's claim by ignoring information and materials provided demonstrating the extent of

Plaintiff's claimed damage.  Massey refused and failed to fully and properly pay Plaintiff's claim

for damage to its property caused by fire.  Massey further failed to fully and properly pay Plaintiff's

claim for its lost business income and extra expense, despite having proof of such loss.  Massey

failed to perform and complete investigation of the claim, failed to obtain a legal opinion on his

**PLAINTIFF'S FIRST AMENDED COMPLAINT - PAGE 11 OF 21.**

obligations to Plaintiff and ignored the true facts of the claim.  Massey's conduct, acts, omissions and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.50 (a)(4) of the DTPA.

40.     Further, Plaintiff presented voluminous documentation supporting their structure, contents, business income loss and extra expense claims.  Plaintiff requested the claim be fully paid on numerous occasions, however the claim was never fully paid in compliance with the policy or Texas law.  Defendant Massey had the authority and responsibility to properly pay Plaintiff's loss.

41.     By his acts, omissions, failures and conduct that are described in this petition, Defendant Massey is guilty of violating the DTPA in many respects including, but not limited to, the following:

a.      Defendant Massey represented to Plaintiff that the insurance policies and Defendant's adjusting and investigative services had characteristics or benefits that it did not have, which gives Plaintiff the right to recover under Section 17.46 (b)(5) of the DTPA in that Massey represented the policy had lost business income and extra expense coverage yet failed to fully pay Plaintiff its lost business income and extra expenses;

b.      Defendant Massey represented to Plaintiff that the insurance policies and Defendant's adjusting and investigative services were of a particular Central, quality, or grade when they were of another in violation of Section 17.46 (b)(7) of the DTPA in that Massey represented to Plaintiff that the claim would be adjusted fairly, when it was not;

c.      Defendant Massey represented to Plaintiff that the insurance policies and Defendant's adjusting and investigative services conferred or involved rights, remedies, or obligations that it did not have, in violation of Section 17.46 (b)(12) of the DTPA in that Massey represented the policy would cover certain categories of damage, such as lost business income and extra expense coverage, yet failed to fully pay Plaintiff for such damage;

d.      Defendant Massey engaged in an unconscionable action in that it took advantage of Plaintiff's lack of knowledge, ability and experience in insurance matters to a grossly unfair degree given Plaintiff is not in the business of insurance, has little experience filing insurance claims, has little knowledge of Texas insurance law, and has no knowledge of the duties of the carrier and adjusters to insureds when adjusting and

**PLAINTIFF'S FIRST AMENDED COMPLAINT - PAGE 12 OF 21.**

paying claims. Defendant's unconscionable conduct gives Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA; and,

e.    Defendant Massey represented that he would fully pay to repair the damages caused by the fire including, but not limited to business income loss and extra-expense and despite Plaintiff presenting evidence of its damages, failed to fully pay the claim, violating Sections 17.46 (b)(5), (7) and (12) of the DTPA; and

f.    Defendant Massey's conduct, acts, omissions and failures, as described in this petition and described more fully below, are unfair practices in the business of insurance in violation of Section 17.50 (a)(4) of the DTPA.

42.    Defendant's Massey's conduct, acts, omissions and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.50 (a)(4) of the DTPA.  Such conduct was relied upon by Plaintiff to its detriment and were a proximate and producing cause of its damages.  Further, said unlawful acts and practices were committed knowingly and intentionally, for which Plaintiff should recover additional damages as provided by the DTPA.

## B. Texas Insurance Code Violations

43.    Plaintiff reasserts and incorporates by reference all the facts and allegations set forth above.  Plaintiff has met all conditions precedent to bringing this cause of action against Defendant Massey.

44.    Defendant Massey's conduct, as outlined above, demonstrates that he engaged in unfair or deceptive acts or practices in the business of insurance in violation of Sections 541.051 and 541.060 of the Texas Insurance Code.  Such violations include, without limitation, all the conduct described in this petition plus Massey's unreasonable delays in the investigation, adjustment and resolution of Plaintiff's claim and his failure to fully and promptly pay the claim after receipt of evidence that the damage was caused by a covered peril, and his failure to fully pay for the proper

repair of Plaintiff's property and Plaintiff's business income loss when liability had become reasonably clear.

    45.    Specifically, Defendant Massey is guilty of violating the Texas Insurance Code in many respects including, but not limited to, the following:

    a.    Defendant Massey engaged in unfair claims settlement practices prohibited by Section 541.060 (1) of the Texas Insurance Code by misrepresenting to a claimant a material fact or policy provision relating to coverage at issue by representing that the insurance policy issued by Central provided coverage for loss under specific circumstances including i) the costs associated with the rental of temporary restrooms while the fire damage to the main structure were effectuated; ii) the costs associated with the temporary HVAC system for the temporary tent erected at the property while the fire damage to the main structure was repaired, iii) the costs associated with the three-phase electrical work required by the code enforcement officer (which was delayed by Massey and Cagle with the consent of Central to the point that it was completed shortly before Plaintiff returned to the completed structure); and iv) the costs associated with the rental of temporary dressing rooms for the bride and groom while the fire damage to the structure was repaired. Despite representing coverage was available for these categories of damages, Massey failed to fully pay Plaintiff for such damage. Such misrepresentations concerned the details of the policy issued by Central. Further, Massey informed Plaintiff that an advance of $50,000.00 would be forthcoming and was being paid under extra expense portion of the policy. Later, after payment was made, Massey and/or Cagle reclassified the payment as a business personal property payment. The reclassified payment lowered the amount received by Plaintiff. Such misrepresentations also concerned the details of the policy issued by Central.

    b.    Defendant Massey engaged in unfair claims settlement practices prohibited by Section 541.060 (2) of the Texas Insurance Code by failing to attempt, in good faith, to effectuate a prompt, fair and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear and Section 541.060 (7) of the Texas Insurance Code by refusing to pay a claim without conducting a reasonable investigation with respect to the claim by failing to pay Plaintiff's claim in full. Massey was not only involved in the investigation of the claim, he had authority to determine what should be paid to Plaintiff and made payments to Plaintiff. Thus, Massey was an individual at the insurance company who refused to pay the claim and is individually liable to Plaintiff under Sections 541.060(2) and 541.060(7).

    c.    Defendant Massey engaged in unfair claims settlement practices prohibited by Section 541.061(1) of the Texas Insurance Code by making an untrue statement of material fact, Section 541.061(2) of the Texas Insurance Code by failing to state a

material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; and, Section 541.061(3) of the Texas Insurance Code by making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact by representing a payment made under the policy for an advance of $50,000.00 was being paid under extra-expense coverage portion of the policy. Massey never informed Plaintiff that the payment would be made against the business personal property limit, and such advance was later reclassified as an payment against the business personal property portion of the policy. Massey explained the purpose of the advance was to address the difficulty Plaintiff was experiencing in maintaining the business continuity and was for the purchase of computers and anything else to assist them with operating the business.

46.     Defendant Massey's conduct, acts, omissions and failures, as described in this petition, was relied upon by Plaintiff to its detriment and were a proximate and producing cause of Plaintiff's damages. Further, said unlawful acts and practices were committed knowingly and intentionally, for which Plaintiff should recover additional damages as provided by the Texas Insurance Code.

## V.  CLAIMS AGAINST DEFENDANT CAGLE

### A.  Deceptive Trade Practices Act Violations

47.     Plaintiff reasserts and incorporates by reference all the facts and allegations set forth above.  Plaintiff has met all conditions precedent to bringing this cause of action against Defendant Cagle.

48.     Plaintiff cooperated with Cagle's investigation of the claim by responding to inquiries and providing documentation supporting its claim.  Cagle failed to properly investigate Plaintiff's claim and ignored information and materials provided by Plaintiff's demonstrating the magnitude of their covered loss.  Cagle failed to fully and properly pay Plaintiff's claim for its lost business income, despite having proof of such loss.  Cagle's failed to perform and complete investigation of the claim, failed to obtain a legal opinion on his obligations to Plaintiff and ignored the true facts

of the claim.  Cagle's conduct, acts, omissions and failures, as described in this petition, are unfair

practices in the business of insurance in violation of Section 17.50 (a)(4) of the DTPA.

49.     Further, Plaintiff presented voluminous documentation supporting their structure,

contents and business income loss claims.  Plaintiff requested the claim be fully paid on numerous

occasions, however the claim was never fully paid in compliance with the policy or Texas law.

During his adjustment of the claim, Cagle not only had authority to make payments, he did not pay

monies he has acknowledged were due Plaintiff.

50.     By his acts, omissions, failures and conduct that are described in this petition,

Defendant Cagle violated the DTPA.  Specifically, Defendant Cagle violated the DTPA in many

respects including, but not limited to, the following:

a.      Defendant Cagle represented to Plaintiff that the insurance policies and Defendant's
        adjusting and investigative services had characteristics or benefits that it did not
        have, which gives Plaintiff the right to recover under Section 17.46 (b)(5) of the
        DTPA in that Cagle represented the policy had lost business income and extra
        expense coverage yet failed to fully pay Plaintiff its lost business income and extra
        expenses;

b.      Defendant Cagle represented to Plaintiff that the insurance policies and Defendant's
        adjusting and investigative services were of a particular Central, quality, or grade
        when they were of another in violation of Section 17.46 (b)(7) of the DTPA in that
        Cagle represented to Plaintiff that the claim would be adjusted fairly, when it was
        not;

c.      Defendant Cagle represented to Plaintiff that the insurance policies and Defendant's
        adjusting and investigative services conferred or involved rights, remedies, or
        obligations that it did not have, in violation of Section 17.46 (b)(12) of the DTPA in
        that Cagle represented the policy would cover certain categories of damage, such as
        lost business income and extra expense coverage, yet failed to fully pay Plaintiff for
        such damage;

d.      Defendant Cagle engaged in an unconscionable action in that it took advantage of
        Plaintiff's lack of knowledge, ability and experience in insurance matters to a grossly
        unfair degree given Plaintiff is not in the business of insurance, has little experience
        filing insurance claims, has little knowledge of Texas insurance law, and has no

knowledge of the duties of the carrier and adjusters to insureds when adjusting and paying claims. Defendant's unconscionable conduct gives Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA;

e.      Defendant Cagle represented that he would fully pay to repair the damages caused by the fire including, but not limited to business income loss and extra-expense and despite Plaintiff presenting evidence of its damages, failed to fully pay the claim, violating Sections 17.46 (b)(5), (7) and (12) of the DTPA; and

f.      Defendant Cagle's conduct, acts, omissions and failures, as described in this petition and described more fully below, are unfair practices in the business of insurance in violation of Section 17.50 (a)(4) of the DTPA.

51.      Defendant's conduct, acts, omissions and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.50 (a)(4) of the DTPA. Such conduct was relied upon by Plaintiff to its detriment and were a proximate and producing cause of its damages. Further, said unlawful acts and practices were committed knowingly and intentionally, for which Plaintiff should recover additional damages as provided by the DTPA.

## B. Texas Insurance Code Violations

52.      Plaintiff reasserts and incorporates by reference all the facts and allegations set forth above. Plaintiff has met all conditions precedent to bringing this cause of action against Defendant Cagle.

53.      Defendant Cagle's conduct, as outlined above, demonstrates that he engaged in unfair or deceptive acts or practices in the business of insurance in violation of Sections 541.051 and 541.060 of the Texas Insurance Code. Such violations include, without limitation, all the conduct described in this petition plus Cagle's unreasonable delays in the investigation, adjustment and resolution of Plaintiff's claim and his failure to fully and promptly pay the claim after receipt of evidence that the damage was caused by a covered peril, and his failure to fully pay for all damages incurred by Plaintiff and covered by the policy when liability had become reasonably clear.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - PAGE 17 OF 21.**

54.     Specifically, Defendant Cagle violated the Texas Insurance Code in many respects including, but not limited to, the following:

a.      Defendant Cagle engaged in unfair claims settlement practices prohibited by Section 541.060 (1) of the Texas Insurance Code by misrepresenting to a claimant a material fact or policy provision relating to coverage at issue by representing that the insurance policy issued by Central provided coverage for loss under specific circumstances including i) the costs associated with the rental of temporary restrooms while the fire damage to the main structure were effectuated; ii) the costs associated with the temporary HVAC system for the temporary tent erected at the property while the fire damage to the main structure was repaired, iii) the costs associated with the three-phase electrical work required by the code enforcement officer (which was delayed the point that it was completed shortly before Plaintiff returned to the completed structure); iv) the costs associated with the rental of temporary dressing rooms for the bride and groom while the fire damage to the structure was repaired, v) the costs associated with the rental of the box truck; vi) the costs associated with the dance floor and window panel rental; and viii) the costs associated with the rental of other items necessary to maintain Plaintiff's business. Despite representing coverage was available for these categories of damages, Cagle and Massey failed to fully pay Plaintiff for such damage. Such misrepresentations concerned the details of the policy issued by Central. Further, such misrepresentations also concerned the details of the policy issued by Central.

b.      Defendant Cagle engaged in unfair claims settlement practices prohibited by Section 541.060 (2) of the Texas Insurance Code by failing to attempt, in good faith, to effectuate a prompt, fair and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear and Section 541.060 (7) of the Texas Insurance Code by refusing to pay a claim without conducting a reasonable investigation with respect to the claim by failing to pay Plaintiff's claim in full. Cagle was not only involved in the investigation of the claim, he had authority to determine what should be paid to Plaintiff and made payments to Plaintiff.  Thus, Cagle was an individual at the insurance company who refused to pay the claim and is individually liable to Plaintiff under Sections 541.060(2) and 541.060(7).

c.      Defendant Cagle engaged in unfair claims settlement practices prohibited by Section 541.061(1) of the Texas Insurance Code by making an untrue statement of material fact, Section 541.061(2) of the Texas Insurance Code by failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; and, Section 541.061(3) of the Texas Insurance Code by making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact by failing to tell Plaintiff the true value of its wrongfully confiscated freezer and paying Plaintiff less than fair market value (let alone, replacement cost), for the freezer despite Plaintiff's policy being a replacement cost policy.

55.     Defendant Cagle's conduct, acts, omissions and failures, as described in this petition, was relied upon by Plaintiff to its detriment and were a proximate and producing cause of its damages. Further, said unlawful acts and practices were committed knowingly and intentionally, for which Plaintiff should recover additional damages as provided by the Texas Insurance Code.

## VI.  WAIVER AND ESTOPPEL

56.     Defendants have waived and are estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to Plaintiff.

## VII.  CONDITIONS PRECEDENT

57.     All conditions precedent necessary to maintain this action have been performed, have occurred, or could not be timely accomplished prior to filing of suit.  This suit was filed within two years of discovery of the acts complained of herein.

## VIII.  DAMAGES

58.     The above described acts, omissions, failures and conduct of Defendants caused Plaintiff's damages which include, without limitation, the cost to properly and fully repair its property, payment for lost Business Income and payment for Extra Expenses incurred relative to the claim.  Plaintiff is also entitled to recover the amount of its claim plus an 18% per annum penalty on the claim against Defendant Central as damages under the Prompt Payment of Claims Act. Plaintiff seeks all damages it is entitled to under Texas law.

## IX.  ADDITIONAL DAMAGES

59.     Defendants Central, Massey and Cagle knowingly and intentionally committed deceptive trade practices and unfair insurance practices as those terms are defined in the applicable

statutes.  Because of such conduct, Plaintiff is entitled to the additional damages authorized by Section 17.50(b)(1) of the DTPA and Texas Insurance Code.

## X.  ATTORNEY'S FEES

60.     As a result of the above described wrongful acts by Defendants, Plaintiff has engaged the services of the below-signed attorneys.  Plaintiff seeks attorneys' fees for the prosecution of this suit pursuant to Sec. 17.50(d) of the Texas Business and Commerce Code, Sections 541 and 542 of the Texas Insurance Code and Sec. 38.001 of the Texas Civil Practice and Remedies Code.

## XI. JURY DEMAND

61.     Plaintiff respectfully requests that this case be tried before a jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that upon final jury trial, Plaintiff be awarded damages which are set forth above and which are in the sum in excess of the minimum jurisdiction of this Court, costs of Court, reasonable attorney's fees for the trial and any subsequent appeal of this case, pre-judgment and post-judgment interest at the highest rate permitted by law, damages authorized by the Texas Insurance Code and the Texas Business and Commerce Code, and for such other and further relief, both at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

*/s/ Robert N. Grisham II*
Robert N. Grisham II
State Bar Number: 00792550
5910 N. Central Expressway - Suite 925
Dallas, Texas 75206
Telephone:  (214) 987-0098
Facsimile:  (214) 987-4098
Email: robert@grishamlaw.com

PLAINTIFF'S FIRST AMENDED COMPLAINT - PAGE 20 OF 21.

Scott M. Keller
State Bar Number: 11198350
LAW OFFICES OF SCOTT M. KELLER
3131 McKinney Avenue, Ste. 720
Dallas, Texas 75204
Telephone: (214) 741-2963
Facsimile:  (214) 741-2959
Email: scottmkeller@sbcglobal.net

**ATTORNEYS FOR PLAINTIFF**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on a true and correct copy of the foregoing instrument has been served in accordance with the Federal Rules of Civil Procedure, via electronic filing, on all counsel of record on this 1st day of July 2016.

*/s/ Robert N. Grisham II*
Robert N. Grisham II